# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| In re:<br><br>REVEL AC, INC., *et al.*,<br><br>      Debtors. | Civil Action No. 15-02594-JBS-JS |
| POLO NORTH COUNTRY CLUB, INC.,<br><br>      Plaintiff,<br><br>v.<br><br>ACR ENERGY PARTNERS, LLC,<br><br>      Defendant. | **ANSWER AND VERIFIED COUNTERCLAIM BY ACR ENERGY PARTNERS, LLC** |

Defendant, ACR Energy Partners, LLC ("ACR Energy"), through its undersigned attorneys, in response to the Verified Complaint filed by Plaintiff, Polo North Country Club, Inc. "Polo North"), filed in the Superior Court of New Jersey, Chancery Division, Atlantic County ("State Court"), bearing case number ATL-C-20-15 ("State Court Action") on April 7, 2015, removed to this Court by virtue of the filing of the Notice of Removal by ACR Energy on April 7, 2015, hereby states as follows:

1.     Denied.   ACR Energy is without information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 1 of the Verified Complaint.  By way of further answer, ACR Energy admits that Polo North was a party to a purchase agreement to purchase substantially all of the assets of Revel AC, Inc. and its debtor affiliates and that an order was entered by the bankruptcy court approving of the transactions contemplated by such agreement, however, ACR Energy is without information as to whether the transactions contemplated by such agreement were consummated and if so, the identity of the entity that took title to the assets and is successor to the debtors/sellers.

2.     Denied.   ACR Energy is without information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 2 of the Verified Complaint.  By way of further answer, ACR Energy admits that Polo North was a party to a purchase agreement to purchase substantially all of the assets of Revel AC, Inc. and its debtor affiliates and that an order was entered by the bankruptcy court approving of the transactions contemplated by such agreement, however, ACR Energy is without information as to whether the transactions contemplated by such agreement were consummated and if so, the identity of the entity that took title to the assets and is successor to the debtors/sellers.

3.     The allegations set forth in Paragraph 3 of the Verified Complaint are admitted.  By way of further answer, ACR Energy is party to an energy sales agreement and a lease, the counter-parties of which are Revel Entertainment Group, LLC and NB Acquisitions, LLC, respectively.  Both the energy sales agreement and the lease remain executory contracts within the exclusive jurisdiction of the United States Bankruptcy Court for the District of New Jersey.

4.     The allegations set forth in Paragraph 4 of the Verified Complaint are admitted.

5.     Admitted in part and denied in part.  The allegations set forth in the first sentence of Paragraph 5 of the Verified Complaint are admitted.  ACR Energy is without information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 5 of the Verified Complaint. By way of further answer ACR Energy specifically denies the speculative allegations set forth in the second sentence of paragraph 5.

6.     Based upon information and belief, the allegations set forth in Paragraph 6 of the Verified Complaint are inaccurate and are therefore denied.

7.     Denied.  ACR Energy is without information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 7 of the Verified Complaint.

8.      Admitted in part and denied in part.  ACR Energy admits that ACR Energy sent to Polo North proposed terms for the provision of energy services, including electricity and emergency electrical back-up services, in January of 2015 and that Polo North represented at that time that the economic terms were satisfactory to Polo North and that despite such representations, Polo North failed and refused to provide ACR Energy assurance of payment for energy services following the closing of the transfer of the former Revel complex.  The remaining allegations set forth in Paragraph 8 of the Verified Complaint are denied.

9.      Admitted in part and denied in part.  ACR Energy admits that Polo North made a single offer to ACR Energy to purchase energy services and that ACR Energy and Polo North have not reached an agreement.  The remaining allegations set forth in Paragraph 9 of the Verified Complaint are denied.  It is specifically denied that Polo North offered at any time to pay $250,000 for just two weeks of electrical service from ACR Energy.

10.      The allegations set forth in Paragraph 10 of the Verified Complaint are denied.

11.      To the extent that the allegations set forth in Paragraph 11 of the Verified Complaint refer to a document, ACR Energy states that the document speaks for itself, and denies any characterization thereof.  ACR Energy is without

information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 11 of the Verified Complaint.

12.    To the extent that the allegations set forth in Paragraph 12 of the Verified Complaint refer to a document, ACR Energy states that the document speaks for itself, and denies any characterization thereof.  ACR Energy is without information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 12 of the Verified Complaint.

13.    To the extent that the allegations set forth in Paragraph 13 of the Verified Complaint refer to a document, ACR Energy states that the document speaks for itself, and denies any characterization thereof.  ACR Energy is without information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 13 of the Verified Complaint.

14.    To the extent that the allegations set forth in Paragraph 14 of the Verified Complaint refer to a document, ACR Energy states that the document speaks for itself, and denies any characterization thereof.  ACR Energy is without information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 13 of the Verified Complaint.

15.    The allegations set forth in Paragraph 15 of the Complaint are denied. By way of further answer, in the event of an emergency at the former Revel

complex ACR Energy is able to and will commence the delivery of electrical and other services to the complex.

16.    The allegations set forth in Paragraph 16 of the Complaint set forth a request for relief to which no response is required.   To the extent a response is required, ACR Energy denies the allegations set forth in Paragraph 16.

**WHEREFORE,** Defendant, ACR Energy Partners, LLC hereby demands judgment against Plaintiff, Polo North Country Club, Inc., dismissing the Verified Complaint with prejudice and awarding costs and fees to ACR Energy.

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

The Verified Complaint fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrine of unclean hands.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrine of equitable estoppel.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrine of unjust enrichment.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrine of waiver.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by lack of privity.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff lacks standing.

ACR Energy reserves the right to assert additional affirmative defenses.

## CERTIFICATION PURSUANT TO LOCAL CIV. R. 11.2

Pursuant to Local Civ. R. 11.2, I certify that this action is not subject to any other action pending in any Court, or any pending arbitration or administrative proceeding other than the following:

*In re Revel AC, Inc., et al.*, Debtors, Case No. 14-22654 (GMB) (Bankr. D.N.J.).

Dated:        April 14, 2015                 */s/ Stuart M. Brown*
                                              Stuart M. Brown

## VERIFIED COUNTERCLAIM

Defendant-Counterclaimant, ACR Energy Partners, LLC ("ACR Energy"), by way of Verified Counterclaim against Plaintiff-Counterclaim Defendant, Polo North Country Club, Inc., hereby states as follows:

### Introduction

1.      This Counterclaim arises from Polo North's recent purchase of the property formerly known as the Revel Atlantic City Hotel and Casino (the "Complex"), and its unilateral decision to forego paying for energy services under the Energy Sales Agreement that the former owner of the Complex had entered into with ACR Energy and which remains executory. Indeed, rather than assuming the Energy Sale Agreement, as the bankruptcy process allowed, or even negotiate in good faith toward an interim or a long-term contract, Polo North has announced its intention to imminently begin to  improperly use the energy equipment and distribution system owned by ACR Energy within the Complex (collectively, the "ACR-Owned Equipment") to power, heat and cool the Complex. Not only is such a wrongful interference with ACR Energy's property a wholesale derogation of the law, but it threatens to immediately cause irreparable damage to the ACR-Owned Equipment.

2.      Were these risks not enough, because of the dangers posed (i) to the ACR-Owned Equipment, and the expertise and training required to safely operate

such equipment, Polo North's attempt to inspect, attach equipment to, operate or distribute energy through the ACR-Owned Equipment are likely to cause serious human injury or death.   Absent the entry of an appropriate order enjoining Polo North, and its agents, representatives and contractors from interfering with or operating the ACR-Owned Equipment, and (ii) to ACR Energy and the public resulting from the unlicensed or permitted operation of temporary electrical generating equipment in violation of applicable Federal, state and local air, noise and water pollution laws and regulations, both ACR Energy and the public will be irreparably harmed.

### Parties

3.      Plaintiff-Counterclaim Defendant, Polo North Country Club is, upon information and belief, a corporation organized under the laws of the State of Florida and maintains a principal place of business at 11199 Polo Club Road, Wellington, Florida 33414.  Polo North is the Plaintiff in this action.

4.      Defendant-Counterclaimant, ACR Energy Partners, LLC, is a wholly-owned subsidiary of Energenic-US, LLC.  Energenic-US, LLC has two members: Marina Energy, LLC and DCO Energy, LLC.   Marina Energy, LLC has one member: South Jersey Industries, Inc., which is a New Jersey corporation with its headquarters in New Jersey.  DCO Energy, LLC has three members: Frank DiCola,

Michael Jingoli, and Joseph Jingoli, Jr., all of whom are domiciled in New Jersey. ACR Energy is the Defendant in this action.

## Jurisdiction and Venue

5.     This Court has subject-matter jurisdiction over this Counterclaim because the claims asserted herein, and those asserted by Polo North, are core claims within the meaning of 28 U.S.C. § 157(b)(2).

6.     In the alternative, this Court has subject-matter jurisdiction over this Counterclaim because the claims asserted herein, and those asserted by Polo North, are "related to" the title 11 bankruptcy proceedings pending in the Bankruptcy Court pursuant to 28 U.S.C. § 1334.

7.     This Court has subject-matter jurisdiction over this Counterclaim because this is an action between citizens of different states and the amount in controversy exceeds $75,000 pursuant to 11 U.S.C. §1332(a) ("diversity jurisdiction").

8.     Venue is proper in this Court because the Revel bankruptcy cases are pending in the district and all of the events or omissions giving rise to claims asserted herein occurred or will occur within this judicial district and because all of the property that is the subject of this action is situated within this judicial district.

## Facts Common to All Counts

9.    In April 2007, Revel AC, Inc. ("Revel"), issued a Request For Proposal ("RFP") soliciting proposals from providers to "Own, Design, Construct, Operate and Maintain" a complete Central Utility Plant ("CUP") to provide energy services to the Complex.  In return, Revel would enter into an agreement with the chosen company to purchase utility services, including chilled water, hot water, and electricity as well as emergency standby power, to be delivered to the Complex that Revel planned to construct in Atlantic City.

10.    Following several years of delay, Revel and ACR Energy entered into an Energy Sales Agreement on February 17, 2011 (the "ESA") under which ACR Energy agreed to design, construct, finance, and operate the CUP and its attendant distribution system from the CUP to the Complex and within the Complex ("Distribution System").  The agreement was amended and restated twice —first on March 8, 2011 and later on April 11, 2011.

11.    Generally, the CUP manages and transforms electricity received from Atlantic City Electric through a specially designed and constructed substation owned by ACR Energy.  The only connection between the Complex and the power grid  is through ACR Energy's CUP and Distribution System.  The plant also generates electricity and maintains standby backup emergency generation to serve

Revel's needs, as well as providing hot water and chilled water and parasitic services.

12.     The production of energy and its transmission to the Complex utilizes the infrastructure installed and largely owned by ACR Energy both in the CUP and inside the Complex (the "ACR Energy Distribution System"). Inside the Complex, the ACR Energy Distribution System comprises a network of hot and cold water pipes, pumps, valves, and electrical equipment such as transformers, switchgears, and circuit breakers to provide electricity to the Complex.

13.     The ACR Energy Distribution System cost ACR Energy approximately $40 million. The CUP also houses emergency diesel generators that are interconnected via paralleling switchgear to serve the CUP and the Complex. The generators have the capacity to permit the casino to remain fully operational and to allow the remainder of the complex to remain in a safe mode. **Exhibit A** shows pictures of the boilers, chillers, piping to transmit hot and chilled water, the ACR Energy-owned energy transfer station in the Complex, and other ACR Energy-owned electrical equipment in the Complex.[1]

---

[1]     The turbines depicted on Exhibit "A" represent a combined heat and power generation operation owned by ACI Energy Partners, LLC ("ACI"), a sister entity to ACR Energy. ACR Energy and ACI are parties to a lease and a power purchase agreement, whereby ACI leases a portion of the demised premises possessed by ACR and generates and provides to ACR Energy for sale to the Complex electricity and heat.

14.     The CUP and ACR Energy Distribution System was designed and built to Revel's specifications and contains equipment that was designed specifically for this system and, as such, is unique and irreplaceable.

15.     Moreover, the equipment comprising the ACR Energy Distribution System is extremely dangerous and, if not inspected, maintained, repaired and operated by trained ACR Energy personnel, is likely to cause serious and permanent human injuries, including death.

16.     On June 19, 2014 (the "Petition Date"), Revel AC, Inc. and its subsidiaries filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.   Since the Petition Date, and in fact for many months before, Revel attempted to market and sell their assets, through a flawed and contentious sale process.    In the end, after submitting two earlier bids that had failed, the Bankruptcy Court entered the Order approving of the sale of the Debtors assets to Polo North on April 6, 2015 ("Sale Order").   A copy of the Sale Order, together with exhibit A thereto, the Amended and Restated Asset Purchase Agreement dated March 20, 2015 (the "Amended Polo North APA"), is attached hereto as **Exhibit B**.

17.     Due entirely to closing conditions of Polo North's own making, on or about April 7, 2015, upon information and belief the sale to Polo North from Revel closed pursuant to Amended Polo North APA.

18.     From the inception of the sale process, all parties, including Polo North, were aware that the sole source of energy services to the Complex was through the CUP and the ACR Energy Distribution System and provided pursuant to the ESA.  Nonetheless, at the request of Polo North, on December 14, 2014, Revel filed in the Bankruptcy Court their *Motion for Entry of Order Rejecting Contracts with ACR Energy* [D.I. 1032] (copy attached hereto as **Exhibit C**).  The Rejection Motion made clear that Polo North "has elected not to have the ESA assumed and assigned to it in connection with such sale."  *Id* at 3.

19.     Further, pursuant to the Amended Polo North APA, there was no requirement for Revel to ensure any continuity of energy services, as the only obligation was: "All utility services that are available to the Revel Casino Hotel as of the date of this Agreement shall remain in effect in all material respects through the Closing Date . . ." *See* **Exhibit B** at § 10.6.

20.     Notwithstanding Polo North's clear and unequivocal decision to acquire the Complex (specifically, only that portion of the assets comprising the Complex owned by Revel) without conditioning such acquisition on an agreement to purchase energy services from ACR Energy, ACR Energy for over four months attempted to negotiate the terms of a new energy services agreement with Polo North.  Polo North refused all efforts to arrive at an appropriate market agreement for energy services.

21.     With no agreement for energy services on the Closing Date and ACR Energy unwilling to continue to provide such services at a price below cost and a reasonable profit, on multiple occasions, ACR Energy demanded assurances from Polo North that it would be paid for the energy services delivered to the Complex effective as of the Closing Date and thereafter, and ACR Energy receiving no acceptable offer to purchase energy services or any assurance of payment by Polo North, ACR Energy provided Polo North of its intention to terminate service. *See* Notice of Termination, **Exhibit D**.

22.     As Polo North made no reasonable attempt to provide ACR Energy assurance that energy services provided by ACR Energy to the Complex would be paid for and would not agree to pay the reasonable and market rate for energy services, on April 9, 2015, ACR Energy terminated service to the Complex.

23.     Since taking possession of the Complex, Polo North has, upon information and belief, directly and intentionally taken action and has stated its intention further to interfere with the ACR Energy Distribution System by, among other things:

   a. Intentionally threatening to operate the ACR Energy Distribution System by hooking up temporary generators;

   b. Attempting to remove parts from or alter the ACR Energy Distribution System; and

c. Otherwise intentionally interfering with the ACR Energy Distribution System.

## **FIRST COUNT**

### **(Trespass to Chattel)**

24.     ACR Energy repeats and realleges the allegations set forth in the previous paragraphs of this Answer and Counterclaim as if set forth at length herein.

25.     By intentionally interfering with the ACR Energy Distribution System, Polo North, directly, or through its agents, representatives or contractors, has committed Trespass to Chattels belonging to ACR Energy.  To state a claim for trespass to chattels under New Jersey law, a claimant must assert the following elements: (1) the plaintiff owns personal property; (2) with which the defendant has interfered or intermeddled; and (3) such that the value or condition of the property is impaired.  *Great Am. Ins. Co. v. Nicholas*, 1989 WL 125350, at *3 (D.N.J. Oct. 3, 1989).  Trespass to chattels does not limit itself to damage to chattels, rather "a trespass to a chattel may be committed by intentionally …intermeddling with a chattel in the possession of another." *Restatement (Second) of Torts. § 217* (1965).

26.     ACR has been damaged and stands to be irreparably harmed by Polo North's intentional interference with the ACR Energy Distribution System.

## SECOND COUNT

### (Conversion)

27.     ACR Energy repeats and realleges the allegations set forth in the previous paragraphs of this Answer and Counterclaim as if set forth at length herein.

28.     Polo North, directly, or through its agents, representatives or contractors, has, upon information and belief, intentionally attempted to exercise dominion and control over the ACR Energy Distribution System, or a portion thereof.   Under New Jersey law, conversion is "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alternation of their condition or the exclusion of an owners' rights. *LaPlace v. Briers,* 404 N.J. Super. 585 (App. Div. 2009); *Chicago Title Ins. Co. v. Ellis*, 409 N.J. Super. 444, 456, 978 A.2d 281, 288 (App. Div. 2009) (conversion is the "wrongful exercise of dominion or control over property of another without authorization and to the exclusion of the owner's rights in that property.").

29.     Polo North's intentional and wrongful conduct, directly, or through its agents, representatives or contractors, has deprived ACR Energy of its rights to the ACR Energy Distribution System.

30.     ACR Energy has been damaged and is under imminent threat of damage by Polo North's intentional conversion of the ACR Energy Distribution System, or portion thereof.

## THIRD COUNT

### (Public Nuisance)

31.     ACR Energy repeats and realleges the allegations set forth in the previous paragraphs of this Answer and Counterclaim as if set forth at length herein.

32.     A public nuisance "is related to conduct, performed in a location within the actor's control, which has an adverse effect on a common right. Second, a private party who has suffered special injury may seek to recover damages to the extent of the special injury and, by extension, may also seek to abate." *In re Lead Paint Litig.*, 191 N.J. 405, 429, 924 A.2d 484, 499 (2007).

33.     Polo North's efforts to bring energy services to the Revel Casino though generators and other unintended methods, pose the real and immediate risk of a public nuisance.

## FOURTH COUNT

### (Injunction)

34.     ACR Energy repeats and realleges the allegations set forth in the previous paragraphs of this Answer and Counterclaim as if set forth at length herein.

35.     Preliminary injunctive relief is warranted when (1) the movant shows a reasonable likelihood of success on the merits; (2) the movant is likely to suffer irreparable harm in the absence of the requested relief; (3) the threatened harm to the moving party outweighs any harm to the non-moving party; and (4) the public interest favors granting the requested relief.  *New Jersey Retail Merchs. Ass'n v. Sidamon-Eristoff*, 669 F.3d 374, 385-86 (3d Cir. 2012).    This test requires the Court to "balance these four . . . factors to determine if an injunction should issue." *Allegheny Energy, Inc. v. DQE, Inc.*, 171 F.3d 153, 158 (3d Cir. 2009) (quotation omitted).

36.     First, the uncontroverted facts demonstrate that ACR Energy is likely to succeed on the merits of all three causes of action set forth above.  Second, Polo North's  wrongful conduct justifies equitable relief and clearly satisfies the element of irreparable harm.  Not only will Polo North's designed conduct seriously and potentially permanently damage the ACR Energy Distribution System, but the consequences of Polo North's conduct could create severe and irreparable damage to Atlantic City,  its population and environs.  Generally "harm is considered irreparable in equity if it cannot be redressed by money damages," *Del. River &*

*Bay Auth. v. York Hunter Constr., Inc.,* 344 N.J. Super. 361, 365-69 (Ch. Div. 2001).  Certainly, the actions contemplated by Polo North pose risks that monetary damages cannot redress.

37.    Third, the balance of equities again clearly tips sharply in favor of ACR Energy's request for injunctive relief.  It cannot be ignored that Polo North voluntarily elected to close on the purchase of the Revel Casino with full knowledge for months of the need for energy services and that such services had been provided since construction by ACR Energy pursuant to the ESA.[2]  Not only did Polo North choose not to assume the ESA, which the Bankruptcy Code clearly allowed, but, despite the concerted efforts of ACR Energy to accommodate Polo North with discounted transition period pricing, it failed to engage in any reasonable negotiations toward even a short term energy services agreement.

---

[2] Indeed, as stated by this Court with respect to ACR Energy's motion for stay pending appeal of the January Polo North Sale Order:

> The situation is different with regard to ACR, whose power plant continues to function for the benefit of Debtors' property. It is logically and economically not conceivable that the purchaser, interested in maintaining and developing the premises, would evict ACR and plunge the project into darkness. This was acknowledged, if not promised, by counsel for Polo North at the hearing on this motion.

*In re Revel AC, Inc.,* 525 B.R. 12, n.15 (D.N.J. 2015)  rev'd, No. ECO-013-E, 2015 WL 500704 (3d Cir. Jan. 29, 2015) and  on reconsideration in part, No. 14-22654 GMB, 2015 WL 567015 (D.N.J. Feb. 10, 2015).

38.     Fourth, the public interest strongly favors granting ACR Energy injunctive relief.   First and foremost, a hallmark of the public interest is the recognition and respect the law recognizes of  the ownership of private property. Polo North's unilateral attempts to seize the ACR Energy Distribution System and use it at **no cost** to power the Revel Casino, runs afoul of all notions of the public interest.

39.     Moreover, Polo North's unilateral, unsupervised and ill-conceived strategy to power the Revel Casino using generators and other unknown equipment, presents real and material risk to Atlantic City, as well as the men and women Polo North will have tampering with the ACR Energy Distribution System. In this case, the public interest strongly favors granting of injunctive relief.

*[Text continues on the next page]*

**WHEREFORE**, Defendant-Counterclaimant hereby demands judgment against Plaintiff-Counterclaim Defendant Polo North Country Club, Inc., as follows:

a. Preliminarily and permanently enjoining Polo North, its employees, agents, representatives, contractors or any other person or entity purporting to act on its behalf from inspecting, maintaining, repairing, attaching any equipment of lines to, or operating or attempting to operate, or in any way interfering with, the ACR Energy Distribution System;

b. Compelling Polo North to purchase at fair market value, as contemplated by the ESA, the ACR Energy Distribution System;

c. Compensatory and consequential damages;

d. Attorneys' fees and costs of suit; and

e. Such other relief as the Court deems just and equitable.

**DLA Piper LLP (US)**
17 Gordon's Alley
Suite 100
Atlantic City, New Jersey 08401
(609) 449-7000
stuart.brown@dlapiper.com


By:  _/s/ Stuart M. Brown_____
       Stuart M. Brown